The Illinois Appellate Court's Sixth Division is now in session. The Honorable Justice Mary L. Lickler is presiding. Please have a seat. Good afternoon and welcome. Would the lawyers who are going to argue on both sides, beginning with the appellant, please tell us your name. And for the appellant, tell us if you would like to reserve any of your 20 minutes for rebuttal. Good morning, Your Honor. My name is Andre LeBrun. I have two other moving requests, and I have five minutes for rebuttal. Thank you. Counsel, would you spell your last name for me, please? My last name is Grant. G-R-A-N-T. Okay, that's what I thought. Counsel? I'm Assistant Attorney General Kaitlin Schneider. I'm an appellate defendant at least. Okay. As you probably both know, we allow 20 minutes aside. We're generous. We're not going to let you not finish your point, and we will probably have questions. But I will ask you to try to hold your argument to that 20 minutes. Also, to remind you, the microphone is to record. It doesn't amplify. And there are a lot of people here who want to hear the argument, so please try to keep your voices up. Mr. Grant, whenever you're ready, you may proceed. Thank you, Your Honor. May it please the court, to my partner, Mr. Brown, to the attorney for the Attorney General's office, and to my clients, the family of Darren Green, Jr. If a state trooper is asked to go to a home to do a well-being check of a wealthy, elderly couple, and the request was made by a family member or friend, and those state troopers get to this wealthy, elderly couple's home. It's a mansion in a beautiful, gated community. The state troopers get past the gate, the state troopers enter the home, and they begin to search through the mansion for the couple. As they're searching through the mansion for the couple, they enter a room. And in that room, they find treasures. Money, jewelry, rare jewels, and a private art collection, which has two Rembrandt authentic, original art pieces. They subsequently leave out that room, but when they leave out the room, they find the elderly couple, and the elderly couple are well, and they're happy. They're just enjoying each other and want to be alone. So they allow the two state troopers to leave out on their own. But as the state troopers are leaving out, they go back into this room, they steal money, they steal jewelry, they steal the precious jewels, and they took the two Rembrandts, valued at $10 to $20 million. Are those two state troopers protected by sovereign immunity? Of course not. What about a state trooper who observes a car driving at a high rate of speed? That car is blocked by the state trooper going over 100 miles an hour, going down the toll road. It's driving in and out of traffic. It's driving recklessly, and the state trooper gets behind it, pulls it over, and when the state trooper pulls it over, the state trooper noticed that there's a woman driving, that that woman appears to be intoxicated, that she has a fifth of scotch in her lap, half gone, and she also has a gun. State trooper pulls her over, searches the car, he arrests her, but as he takes her to the police station, he sexually assaults her. Is that state trooper protected by sovereign immunity? Of course not. Nor are the state troopers who are the defendants in this case. Okay, and those are very good analogies and metaphors, I'm not sure what they are. But I think they're easier than this case, because what's hard in this case, and I'll ask you to address it, is that actions of the police in those cases had nothing to do with what their purpose was. Had nothing to do with checking on the well-being of the elderly couple. Had nothing to do with preventing drunk driving. That was simply a follic in detour, if you will, within their, doing their duties as jobs. When a police officer uses force, and perhaps excessive force, in hindsight, the force is being used, arguably, in furtherance of their job as keeping the peace. And so my question is, how does your argument apply in that instance, which is your case? Understood, Your Honor. With the analogies as well as this case has in common, we are not just alleging excessive use of force. We have alleged murder. We have alleged that the officers not just broke the law, but they actually and literally murdered the defendant, Darren Green Jr. That's the difference. And as I'm pointing out, whether they had a lawful right to be there, whether they had a lawful right to stop them, whether they had probable cause to search the car, what they did not have a right to do was to unlawfully shoot him in the back of the head without lawful justification. And murder is a very simple proposition to prove. Murder is simply the intentional and unlawful killing of another person. And that's what, Your Honor, we put in our complaint. That's what we alleged, and we excited the statute on murder verbatim. Not only did we state that he committed murder verbatim, we also quoted every single element necessary to prove murder in the Illinois Compiled Statute. And in addition to that, Judge, we identified the Illinois Supreme Court jury patterns on what constitutes murder. And not just that, Your Honor, these officers didn't just commit that act. There are a plethora of criminal acts that we could have added to the complaint, such as second-degree murder, such as aggravated discharge of a weapon, such as assault and battery, such as official misconduct, such as falsifying police records. In the case law, it's clear. When there's an allegation that state troopers not just violated the law, but they violated state statute, those state troopers are not protected by sovereign immunity, even if they were acting within the scope of their employment. They're not protected by sovereign immunity. So, Mr. Grant, I'm trying to understand from the complaint what you're alleging happened. And you do allege that there was a traffic stop and the police recovered a firearm. And then you allege that after they recovered the firearm, the deceited Darren Green Jr. was no longer in possession of a firearm, or was not in possession of a firearm. I don't know if I'm supposed to infer that he was the person in possession of the firearm. And then you allege that the officer shot him. I don't know what happened in between those two things. And you further allege that the state troopers lied about the incident, but I don't know what you're alleging constitutes the lie. What is it that they said that was not true? And what is it that actually happened between the recovery of the firearm and Mr. Green being shot? Your Honor, those are great questions. That's why we believe this complaint must go forward, because a lot of those questions are questions of fact for the trier of a fact. Well, but you allege it was murder. You say it was execution. Correct. What are the facts that support that allegation? These are the facts. A car was curved on 147th Halsted. When that car was curved on 147th Halsted, our client was a passenger in the car, not the driver of the car. At some point, he asked the driver, he being the state trooper, asked the driver to get out the car. When he asked the driver to get out the car, the state trooper entered the car, one on both sides. The state trooper then, we can't see what happens in the car, but the state trooper appears to recover a gun. We can see the gun on the videotape. The driver is not the decedent? No, the driver is not the decedent. Okay. Darren Green Jr. was a passenger in that car. And he's in the front passenger seat? He's in the front passenger seat. And you're saying, you're alleging, you're telling me now that the troopers then entered the car? That is correct. Okay, and then what happened? They entered the car on, one entrance on the passenger side, one entrance on the driver's side. They're both pulling Darren Green. One is trying to pull him out on the passenger side, the other is trying to pull him out on the driver's side. You can see in the video, the officer being Officer Ellis, he recovers a gun, he has the gun in his hand. So there's a body cam video? There is a body cam video, Your Honor, but the body cam video does not show the actual shooting. Okay. We do see the officer... But it shows what happened between the gun being recovered and Mr. Green being shot in the head? It shows, Your Honor, the trooper with the gun that was recovered from the car. It does show Darren Green with a gun. Our position is that Darren Green never had a gun. Our opponent's position is that Darren Green had a gun in his waistband and the trooper removed the gun from his waistband. Whatever factual dispute, however it is resolved, what is absolutely positive is that the trooper recovered the gun, had sole and exclusive possession of the gun. The car then takes off in crash. After the car crashes... Wait, you said the car then takes off? Well, yes. Okay, because none of that's in the complaint. Nor did we think that was necessary. But when we went to do the Third Amendment complaint, we'd be happy to put that in the complaint, but we didn't think that was necessary. What we do know for sure is that the gun that the trooper took from the car, the gun that he took out of the car, he took that gun and shot him in the back of the head. Literally, he recovered the gun and instead of securing that gun, he took the gun, placed it at the back of Darren Green's head and shot him. Is this before the car took off or after the car took off? This is after the car took off. And who's driving the car? We believe the car is not being driven. We believe that the officer who got in the front seat of the car moved the car into gear and the car moved up in crash. After the car crashed, you can see one of the officers come around to the driver's side. He's standing there with the other trooper. Then you hear the pop. And the lie that was told is that the officers and the troopers first said that there was a struggle over a gun and the gun went off. The second lie that they told was that it was an accidental discharge. The problem occurred, Your Honor, is that when the autopsy report was revealed, it was revealed that Darren Green was shot in the back of the head at point blank range. Darren Green could not be struggling over a gun when he's not facing the man. Darren Green could not be resisting or any of these things when he's shot in the back of the head. And one of the things we point out in terms of exceeding the authority, you don't have authorization to take a gun that you recover and shoot somebody in the back of the head. Darren Green is unarmed. This is an unarmed person. The only person on the scene at that time that had guns were the law enforcement officers. Darren Green had no gun. And once we got the autopsy report, finally the officers come forward and what we were going to put additionally in that complaint that we were not allowed to do, and that is one of the officers admit that, and the officer being Ellis, he admits that the defendant tried to escape and I put one round in the back of his head. You can't get more intentional than that. You do not have a right. Nobody. I don't have a right. No one in this court has a right. You don't have a right to put one round in the back of the head of an unarmed man. You just arrest him. And this is why I'm suggesting to you that the need for specificity may be important in this case because police, as opposed to you and I, do have a right to use deadly force in situations that you and I would not. Right? Of course, Your Honor. So given that, how do we distinguish, we being judges generally, distinguish between murder, which police can also be guilty of, and use of force that is deadly force. You distinguish, Your Honor, what the court does not have to decide right now is whether our complaint is true. No, we don't have to decide that. That's not part of your inquiry. We do have to decide if it's sufficient to get you over a cell phone immunity. Correct. And if we apply the proper standard, which the trial court did not do, with respect to a 619 motion, then first of all, you view the complaint in the light most favorable to the non-moving party. In addition to that, in a 296-2619 complaint, you have to accept that the allegations in the complaint are true. But not conclusory allegations. Murder is pretty conclusory. Not really, Your Honor. Murder, as we pointed out in our brief, murder is a very simple proposition. Murder is the intentional and unlawful killing of another, according to statute. A person kills an individual without lawful justification and commits first-degree murder, or they commit first-degree murder. Or if a person commits first-degree murder, if he intentionally discharges a firearm into the back of someone's head, knowing that such act would cause the death of that person. Murder, according to the statute, is when a person intentionally discharges a firearm into the back of another person's head, knowing that such actions create a strong probability of death or great bodily harm. This is the language taken directly from the Illinois Criminal Code. So, counsel, just for point of clarification, you're not suggesting that every case where a person dies during an encounter, that they would be exempted from sovereign immunity? Absolutely not, Your Honor. We are making a specific allegation. And that specific allegation, and it is not conclusive. These are facts. These are facts. We have to prove it. Whether or not there were lawful justification is an issue of fact for the trier of fact. That's an issue for a jury. That's not an issue for whether or not the complaint is sufficient. We must take that complaint and the reasonable inferences. And the reasonable inference is, if you shoot an unarmed man in the back of the head at point-blank range, that's murder, unless you can demonstrate it's justifiable. But what's most important is that it allows the complaint to stay in the circuit court of Cook County. But are you suggesting, to follow up on Justice Johnson's question, that every encounter with police that results in somebody dying has to be tried in the circuit court of Cook County as opposed to the court of plaintiffs? Absolutely not, Your Honor. And when would it not be? What cases would clearly be within sovereign immunity, in your view? Be within sovereign immunity? In which cases, because, unfortunately, people do die in encounters with police fairly regularly, which of those cases are going to be in the court of claims, which is where the state says all claims should be against that intruder? Well, Judge, the interesting issue, Judge, is that I believe the Illinois Supreme Court agrees with me. I believe the court has repeatedly said, not just have repeatedly said, that when a complaint alleges that a law has been violated, or a statutory law has been violated, then the state employee is not protected by sovereign immunity. They're not protected. We have alleged that laws were violated. Once we make that allegation, the trial court had no right to go back and second-guess it and begin to second-guess the facts or second-guess the legal conclusions. The trial court admitted that it erred. We know that the trial court erred because we pointed out what the law was, and we pointed out where and how the trial court erred. In the trial court after, which in my 30 years of practice, Your Honor, I have never seen a court openly state that the court found it erred in its previous application of existing law. Of course you erred, with all due respect. We pointed out you erred, and we pointed out where and how you erred. But you didn't like the second decision any better. The second decision was worse, Judge. Okay. And the reason why it was worse is because in the second decision, if I can briefly point it out to you, Judge, and I'm sorry. I know I had a speech and an argument to make. It looks like that's not going to happen, but, Judge, the court … I'm like you, Jerry. We tend to talk back and forth. Judge, the court in the second order, in which he admits that he erred … He just says the state's a defendant, so that's the end. Correct. But the court did something else, Judge. And what the court did is after the court said it erred, the court did not … The opinion is silent on what existing law did you not apply and how did you misapply it. And we don't think that's an accident because to identify the existing law that applied in this case and the proper application of it is to admit that sovereign immunity does apply and he has jurisdiction. But he went on and did worse. After we identified for him what the law was on page 5, which is common law record 572, the court literally tells us what he does. And he says the following, and please forgive me. He says to determine whether the state was the real party in interest and whether sovereign immunity applies, the court looks at the following. He gives three things. And we know he's right on this because we pointed it out to him. This is what he says. No allegation that the agent or the employer of the state acted beyond his scope of employment. That's exactly what we pointed out. We said that he acted beyond the state of his employment when he shot Darren Green. He acted beyond his employment using excessive use of force. He acted beyond his authority when they left the interstate, the toll road, which the Supreme Court said is not appropriate. They left the toll road where they're assigned. They went into Harvey. And once you leave and go into Harvey, you're not protected by sovereign immunity anymore because you're not within your normal behavior. But he goes further. He even goes on and says the duty of less have been breached was not on to the public in general. Of course it's on to the public in general. If you do not have a right, one, to commit murder or any other violation, once we identify the statute and say these officers were breaking laws, we have established that. Mr. Grant, I'm sorry, but you are out of time. I just want to make sure there's no more questions. I want you to be able to preserve your time. I do have one other question, and that is, Mr. Grant, why did it take you so long to file the petition for leave to file the third amended complaint? I think, Your Honor, we filed that immediately after we got the initial ruling. We filed a motion to reconsider, and we also, along with that motion to reconsider, we attached the third amended complaint. And the third amended complaint was an attempt to cure every single thing that the court said needed to be cured. And we did that. I hope I've answered the court question. So just, I just want to be clear on the timeline. So the motion to dismiss was filed, set for hearing. The court ruled on the, granted the motion to dismiss, and then you filed the petition for leave. Is that correct? Or did you file the petition for leave before the ruling? Yes and no. Yes and no, Your Honor. Everything that we filed was filed timely. The court granted their motion to dismiss. We filed a motion to reconsider immediately. The court granted that motion to reconsider and said that it erred, and our opinion went on to err some more. And then after he wrote the second order, we immediately filed another motion to reconsider, which the court denied. But along with that motion to reconsider was a third amended complaint asking for leave to file the third amended complaint to add additional facts and whatever the trial court needed to cure it. So we acted immediately. We acted immediately. I know I'm out of time, Justice, but if I could just have 30 seconds for the last sentence. Go ahead. The last sentence, Judge, is the trial court wrote, however, there is no need to apply this analysis in the case to determine whether the plaintiff attempted to circumvent sovereign immunity. He says right here there's no need to apply this analysis. He is telling the court and telling us that he didn't even apply the law. You must apply this analysis. The Supreme Court says you must apply the analysis. You can't create your own standard. If the Supreme Court tells you this is the rule, this is how you determine sovereign immunity, you can't say I'm not going to apply that. And that's why he continues to get it wrong. This is the second opinion. This is second opinion. He admits, I'm not even going to apply that standard. That's why it has to go back. And respectfully, if the court, if this honorable court agrees with us, it may not even have been appropriate to send it back to that particular trial judge. If you're not going to follow the order, trial judge, I presume, to know the law. And once you get it correct and we put it in front of you, you can't say I'm not going to apply the standard that the Illinois Supreme Court said you must apply. And with that, I will be quiet. Okay. You still have five minutes to rebut. Thank you. We'll hear from you again. Counsel. Good afternoon, and may it please the court. I'm Assistant Attorney General Caitlin Chenevert, and I represent the defendants' affilies. I would like to just start by addressing a procedural question that Your Honor had about the timing here as far as the proposed third amended complaint. The order granting the motion to dismiss the second amended complaint was entered in October of 2021. Plaintiffs filed a motion to reconsider in November of 2021, along with a motion for leave to file a third amended complaint. But that motion for leave did not include a proposed, did not tender a proposed third amended complaint at that time. In fact, it was not until February 17th of the following year when the plaintiff filed a motion to reconsider the order denying motion for leave to file a third amended complaint that a third amended complaint was ultimately tendered to the court. But the court then said at some point that it had no jurisdiction to consider whether it could allow the plaintiff to file a third amended complaint. Correct? That's correct. That is what the circuit court said. And that's wrong, isn't it? Correct. The court could have considered whether or not to allow leave to file a third amended complaint. But as we stated in our break, there's nothing indicated in the proposed third amended complaint that would defeat the sovereign immunity defense that defendants raised in their motion to dismiss. But they removed the state of Illinois as a defendant. Which was the entire basis the court had given. Sorry. That was the basis in the court's second dismissal order. That's correct. The state of Illinois had been named as a complaint. In the first dismissal order, the circuit court engaged in a more thorough analysis about the source of duty test, which is the test that the Illinois Supreme Court has instructed the court should use when determining whether sovereign immunity applies. And in any event, this matter is before this court on a ruling on a section 26198 motion. And so de novo standard of review applies. So looking at the case from that matter, I would just like to back up very quickly just to reiterate a few basic points here about what this case is about and what it is not about. This case and this appeal is about in which forum the plaintiff may litigate his claims against this defendant. This appeal does not go to the merits of plaintiff's claim. And the issue here is not whether plaintiffs fail to state a claim against these defendants. Instead, this appeal concerns the specific allegations contained in plaintiff's second amended complaint and whether those allegations show that this complaint must be brought in the court of claims. It is not a broad pronouncement that anything a state employee does in the course of their employment must always be protected by sovereign immunity. And that turns us to the source of duty test that the Illinois Supreme Court has explained governs when analyzing sovereign immunity questions. Can I just stop you there? So you concede that there are instances where an action may be brought into circuit court involving state employees if the facts are sufficiently pled to show that he was acting outside the scope of his employment? Such as, for example, the analogy that Mr. Grant so artfully articulated at the beginning of his argument. Yes, Your Honor, that is correct. For example, in the first hypothetical, a state employee does not have authority to steal from somebody. And in the second hypothetical, a state employee does not have authority to sexually assault anyone. So they would never have authority to engage in that kind of conduct, even if it happened while they were on the clock, so to speak. It just follows from that. They don't have authority to murder somebody either, right? Cops don't have authority to murder people. No, but the Illinois General Assembly has explicitly acknowledged that peace officers, including state troopers, may need to use force at times when conducting their duties. There are several sections of the Illinois Criminal Code. The Use of Force Act. Right. Right, where the Illinois General Assembly has acknowledged that use of force may be needed at times when troopers are conducting, or peace officers are conducting. But if you allege conduct that is outside of that statute, they don't have authority to do it, correct? And it's exactly like the theft, and it's exactly like the rape. Your Honor, I would say if you allege a violation of a statute outside of that conduct, the court need not necessarily just accept the framing of the source of duty alleged to have reached here. Here, for example, plaintiff alleged that the troopers violated a general duty that all individuals owe to each other, not to commit murder. But the court need not accept that framing of the source of duty. In fact, this court in Court Right v. Doyle specifically rejected a similar attempt by a plaintiff. In that case, the plaintiff had received negative performance reviews from her supervisors, and she alleged that the result was intentional, inflectional, emotional distress and interference with economic opportunity. And she alleged that the source of the duty that those defendants breached was the duty not to commit those torts. But this court rejected that characterization of the source of duty and instead looked to the issues raised in the complaint, which were the issues raised in that case, which were that the defendants acting in their official capacities as her supervisors had reviewed her performance and evaluated her performance. And given that that was the nature of the claim and that that's where the duty arose from their job as her supervisor, the source of the duty was properly understood to be arising from their state employment. Similarly here, the state troopers were conducting a traffic stop. They curbed and stopped a vehicle. The plaintiff's own allegations admit that the troopers were duly licensed Illinois State Troopers, that the conduct complained of occurred in the course and scope of their employment and under color of law. There are no allegations in this complaint that the defendants were acting in their personal capacities as private citizens, or that they curbed the car for any improper or illegal purpose. And again, the Illinois General Assembly has acknowledged that at some points during troopers' duties they may need to use force. But the act that's complained of here or that's at issue here is not the curbing the vehicle, but it's the killing that occurred, correct? So shouldn't we be looking at those facts as opposed to why they curbed the car? Well, certainly the use of force here did occur after the vehicle had been curbed, after the vehicle had been stopped. But the use of force here was still related to that stop and to the vehicle being pulled over and stopped. The allegations, as counsel had described during his argument, I do not believe appear in the record anywhere and were not included as facts in any of the iterations of the complaint. But even those descriptions show that the actions occurred here related and in the course of this vehicle being stopped and pulled over. And so the understanding should be that the source of duty alleged to have been breached here arose from the troopers' duties as state troopers in conducting their duties as state troopers when pulling over a vehicle. And to whatever extent the force may have been unreasonable or excessive here, that is an issue that would need to be litigated in the court of claims. Again, sovereignly... Do we know what caused the troopers to go to 147th and Halsted as opposed to remaining on the interstate or the tollway? I do not know, Your Honor, and those facts do not appear in the record. Does the fact that they were at Harvey in any way impact the analysis? It does not, Your Honor, because Illinois state troopers are charged with enforcing the Illinois Vehicle Code and the Illinois statute provides that they have all powers possessed by policemen in cities and sheriffs except that they may exercise such powers anywhere in the state. So if I can ask you to focus on the decision denying the plaintiff leave to file the 3rd Amendment complaint and if you would accept for purposes of argument that neither the 2nd Amendment complaint nor the proposed 3rd Amendment complaint collect sufficient facts to support the conclusion that the officers murdered the decedent. We heard from Mr. Grant today a number of additional facts that are in neither pleading. And if it can be proven, for example, that it's the officer who put the car into gear and Mr. Green did not have the gun and the car crashed and then the officer shot him in the back of the head, could one reasonably infer from those type of facts that the officers acted without legal justification in shooting the decedent and therefore committed the offensive murder? And in that case, it's a long hypothetical, but in that case does the circuit court have jurisdiction? So to first answer the first question Your Honor asked, without the specific facts laid out in front of me, but as you've recited them and as recalling from the way plaintiff's counsel described them, I believe even those facts would still show that whatever use of force here occurred related to the traffic stop and in the course of the trooper's duties conducting the traffic stop in which ultimately force was used. Again, I think that still goes back to my answer previously that even if the force used ultimately was unreasonable or excessive, that would need to be litigated and determined in the court of claims. So let me give you another hypothetical. Let's say the troopers curb the car, the driver has his hands in the wheel, it's just one driver, nobody else, and the officer comes up and shoots him and kills him. Is that subject to sovereign immunity? I know it's an extreme example, but I want to understand how far your argument goes. So in that case, that may be a case where sovereign immunity might not apply just on those facts alone. So what test would you urge upon the court to determine what lies in the circuit court and what lies in the court of claims? The test should be whether the use of force or whether the actions that arise that form the basis of the complaint were related to, in this case, the troopers, but related to the state employee's duties and what they were doing in their official capacity in executing their duties. Here, again, the state troopers had pulled over a vehicle, and in the course of pulling over that vehicle, it appears that there was some kind of situation that occurred in the car, but ultimately force was used. And so the use of force here... But we don't know what happened, right? Because the complaint doesn't allege what happened between the gun being recovered and Mr. Green being shot. That's correct. The complaint does not allege that. And so we don't know at this point, and those facts are not alleged anywhere in the complaint. But how do we get those facts if the case is not allowed to proceed at this juncture, and they're not allowed to amend? I guess those are two separate questions. But if it's not allowed to proceed at this point, how do we get those facts? To answer your first question, how do we get those facts? I would note that here the plaintiff, as I understand it, did receive an investigation file from the Illinois State Police. The subpoena was issued, and the circuit court did order ISP to comply with that subpoena. My understanding is that they did. So the plaintiffs here did receive certain information and documents and evidence to help support them craft an amended complaint. There were also other individuals in the car, so presumably plaintiff's counsel may have been able to interview them as well. Two of those were children, correct? At least one was, I believe that's correct, yes. So in this case, in this particular case, there was an opportunity for the plaintiff here to do some level of investigation, to develop some facts to include those factual allegations into a complaint. And as Your Honors have noted, a lot of the facts, as plaintiff's counsel has described them here today, just simply do not show up anywhere in the most operative complaint, the second amended complaint. And I do believe, I'm not quite certain exactly when the subpoena was issued and tendered over to plaintiff's counsel, but in any event, there was the opportunity here for plaintiff to develop some evidence to include factual allegations into the relevant complaint. I'd like to go back for a minute to Justice Taylor's question and just give you a different hypothetical, except it's not a hypothetical, it's a real case that is now over. But Laquan McDonald showed up, shot him, guilty of murder, second degree I think, battery. Court of claims, I realize he's a Chicago police officer, not a state police officer, but if he were state, guilty of murder, does that go to the court of claims? So, Your Honor, in a situation like that, depending on what facts were alleged in the complaint and how they were Shows up to arrest, to help in the arrest, opens his gun right away, boom, boom, boom, boom, boom, 16 shots. Found guilty of murder. Again, to the extent that the use of force was unreasonable or excessive, but it was connected to the officer's duties, then that would be something that would belong in the court of claims. However, to the extent that there was allegations or evidence to show that the shooting occurred or the use of force occurred for reasons completely unrelated to the situation. Like stealing the gold or raping a woman. Right, or some other kind of personal bias or animus or something along those lines. That would be completely unrelated to the officer's duties. And then in that case, that would not be within the scope of the officer's duties. And thus, the source of duty test there would show that it was not related to the individual's statement. At this juncture in the case, we wouldn't have all of those facts sufficient to support remaining in the circuit court. So you only get those facts through the completion of the discovery and allowing the case to move forward. But with that said, the Supreme Court in PHL versus Pullman Bank and Trust, I believe that was cited. Our Supreme Court says, where the defendant officer acts in excess of his statutory authority, the rights of the plaintiffs to be free from the consequences of his action outweigh the interest of the state, which is served by the sovereign immunity doctrine. Now, if our Supreme Court takes that position, it seems to me that they would also support a position that would allow or be lenient with respect to allowing plaintiffs to amend their complaints. So, you know, why wouldn't we give a plaintiff every opportunity to try to make their claim when our Supreme Court has stated that, you know, the right to be free from the consequences of such actions outweigh the state's interest? Your Honor, I do apologize. In that case, I do not have at the ready, but I would be happy to submit any supplemental briefing as to that case specifically. But again, to answer your question more specifically about whether the plaintiff should be allowed to file another amended complaint to allow This is a 2005 case, by the way. To whether the plaintiff here should be allowed to file an amended complaint after allowing facts to develop. Again, I would just note here that, at the very least, there was some opportunity for a plaintiff here to discover some evidence, you know, viewing the video, any other documents that were turned over that they received in the course of ISV complying with the subpoena. So there was an opportunity for plaintiffs here to develop some evidence to include those particular factual allegations into a complaint to support the ultimate legal conclusions that they are asserting of murder. Thank you. Anything else? You are out of time, but if there's any more questions, do you want to summarize? Or any points we didn't let you make, because we definitely peppered you with questions. Your Honor, I would just briefly conclude by reiterating that sovereign immunity presupposes the possibility of a legal wrong via state employee. So the fact that there is an allegation of a legal wrong is not, in and of itself, sufficient to defeat sovereign immunity. Instead, the relevant question should be whether the employee intended to perform some function within the scope of his or her authority when committing the legal wrong. And looking at the facts, as they are alleged here in the second amended complaint, show that the troopers were engaged in the normal scope of their unique governmental functions in completing a vehicle stop, during which time use of force occurred, and that solicit duty should be understood to be a breach of that duty specific to their state employment. And for that reason, we ask that this be closed. I'm sorry. I am going to ask you a question. Just going back to Justice Johnson's concern, I'll let him summarize again. But are you saying really discovery or more discovery doesn't matter here because it is pretty clear that this began as a traffic stop, so anything is going to arise out of the function within the scope of their duty, so it really doesn't matter what other facts the plaintiff might discover. Is that your position? Well, it certainly shows, well, certainly, again, based on the facts as they were recited here today, it does appear that whatever use of force here happened in connection, very closely connected with the traffic stop. And so for this particular instance, yes, the plaintiffs had the opportunity to discover some evidence to then plead additional facts in their complaint to show in some way how this would not be related to the traffic stop, and they failed to do so. Thank you, Your Honors. I'm sorry. Justices, this case concerns one of the most pressing social justice issues of our time. And this case concerns one of the most pressing social justice issues facing our nation today. And that issue is the killing of unarmed African Americans during minor traffic stops. There was a time several years ago when most courts in this nation would simply throw out a case where the allegations were murdered. But with the presence of video and cell phones and all of these things, more of it is being caught on tape to where we can't deny it anymore. One of the challenges we face in this case is that the actual shooting was not caught on tape, so it has to be pieced together. When the state, I'm sorry, when the Attorney General comes before this tribunal and says to this tribunal that we shouldn't go forward and now concedes that the trial court should have allowed us to file an amended complaint or the third amended complaint. Four times during the trial court, they argued to the trial court that the case should be dismissed with prejudice. Four different times. And now they concede in their brief that, well, that was error. It's also error to continue to talk about or attempt to force the plaintiffs to prove murder in the pleadings. That is not the law. That is not the requirement of the law. That is not the requirement in the legal standard when you are reviewing a 2619 motion. Well, to put it in layperson terms, the requirement in the law is that the complaint must allege facts which it proven would sustain a claim. Correct. And here, there's a lot missing. I mean, I think you articulated a number of facts which are not in the second amended complaint, nor are they in the proposed third amended complaint. Your Honor, what is not missing is the most important element and the most necessary element as set forth by the Illinois criminal code and as set forth by the Illinois Supreme Court pattern jury instructions, and that is a person is intentionally killed, which we allege, and that it was unlawful. Stating that it was unlawful is not a conclusion. That is a question of fact for the finder of facts. That's not a conclusion. The murder statute says without lawful justification or some language to that. That is correct, Your Honor. And I would suggest to you that your complaint doesn't have those facts. It's sort of silent on that. And whether you can allege that if we were to reverse and remand, if we were to do that, whether you can allege that or not, I don't know. But you would acknowledge, would you not, that the present complaints don't actually include facts addressing that really critical question, was it without lawful justification? Your Honor, I do not agree with that, respectfully. I think that what the court is asking us to do is to prove the pleadings, to prove murder in the pleadings, which we're not required to do. We are required to set forth facts, and the facts that we have set forth is that Darren Green, Jr. was unarmed. He had no gun. The facts that we set forth is that he was shot in the back of the head with point blank range. The facts that we would set forth in the third amended complaint is that the coroner determined that the killing of Darren Green, Jr. was a homicide. In addition to that, the coroner put forth that he was shot with his head down. Darren Green, Jr. was not facing the person who shot him. In addition to that, in the third amended complaint, we would point out the various lies that the officers told originally when they said there was a struggle over a gun, and they also said there was an accidental discharge. We will also point out an additional complaint that not only was murder committed, but second degree murder was committed. That aggravated discharge was committed. That unlawful use of a weapon was committed. A law enforcement officer, when we talk about whether or not they are acting within the normal function, it is not within the normal function of a law enforcement officer to recover a gun and then shoot a person in the back of the head with the gun. You are licensed to carry a gun that is given to you by the state of Illinois. You are not licensed to shoot somebody with a gun you find in the back of the car. That in and of itself raises red flags. You are not licensed in one of the Supreme Court cases that we pointed out that is deadly on point, and that was when a state trooper left his assignment on the toll road, went into Joliet, ended up going down the wrong street, going the wrong way, and injured somebody. And the Supreme Court said, that's not your normal function. You're not even where you're assigned to be. These officers were not where they're assigned to be. You're talking about the Curry case? I am talking about the Curry case. But they were, the court said, they weren't doing anything related to law enforcement. It's right back to what counsel for the Attorney General said. That police officer wasn't doing any police function, just driving around. Your Honor, if we take it to the logical extreme of the Attorney General, that means that law enforcement can never be, the case can never go forth in a circuit court. Because as long as they're acting, quote, unquote, within the scope of their authority, then they have immunity. And that is not what the Supreme Court says. In fact, Justice, I believe you asked me, so what's the standard? What do we use? The court has told us what the standard is. Is this the case that you're referring to? I'm referring to the Curry case. I'm referring to the Fitts case. The court has repeatedly, it is, I believe the language was, it is, the Supreme Court has long held, this is not a new, the source of duty has nothing to do with, I'm sorry, the source, whether, let me just read it. The applicability of sovereign immunity charged on the source of duty of the breach for which the employee is charged. And our source that we're alleging that they violated is the Illinois Criminal Code. Whether the court believed it was murder, or aggravated battery, or unlawful discharge of a weapon, or lying, or falsifying records, we are alleging that they broke the criminal code and they broke the statute. It goes on. Where the duty is imposed solely by virtue of an individual's employment with the state, sovereign immunity attaches. Exclusive jurisdiction lies in the court of claims. Otherwise, if the duty exists independent of their state employment, the individual is subject to suit in the circuit court. So in this case, you would acknowledge that the incident began when the officers were exercising their duties as law enforcement officers, but at some point pivoted to the state troopers violating the duty not to murder somebody. That's what this case boils down to in a nutshell, right? I try to be reasonable, Your Honor. Yes and no. Sounds like a very rarely answer. Judge, when they left the interstate, when they left the tow road, they're no longer doing their duty. Of course not. Doesn't a state trooper have jurisdiction throughout the state? It depends on where they're assigned. Their assignment was the tow road. Their assignment is not the city of Harvard. The city of Harvard has its own police force, and that was the point of curry. When you leave that interstate, you are no longer cloaked in sovereign immunity. The police officer in curry was a local municipal police officer? No, he was a state trooper. And finally, Judge, they raised the issue about bias. We haven't alleged bias or animus or anything to that effect. That's why I keep citing the criminal code. You can't hold us to a standard higher than the Illinois criminal code holds us to. You can't hold us to a standard higher than the Illinois Supreme Court pattern jury structures as it defines murder. We do not have to prove murder in the pleadings. And they even admit and concede. The plaintiff should have been allowed to amend the complaint. If it is not well pled, allow us to well plead it. That's the whole purpose of an amended complaint. And the Attorney General filed a motion to say discovery. We don't have discovery in this case. That's the only reason we know that the officer, which we also added, the officer stated in his own writing that the defendant, Dan Green, tried to escape, so I put one round in the back of his head. I mean, that's shocking. How intentional can you get? You don't have the right to put one round in the back of a person's head even if they were trying to escape. That's why we're asking for this complaint to go further. And thank you for your patience and thank you for your courtesy. Thank you both. Again, this case was really well argued. These are really interesting questions, and you all did a very good job in your briefs and in your argument. We will take this matter under advisement, and you will hear from us in due course.